Development v. Trizetto. Mr. DePalma Your Honor, may it please the Court. I'm Russell DePalma. I represent Software Development Technologies. This is an appeal from a temporary injunction or preliminary injunction denied in the district court and some time context is probably relevant. In May 2013, the beginning of May, Software Development Technologies filed its lawsuit in Texas State Court. It was removed at the end of the month by Trizetto. About June 7, 2013, Software Development Technologies filed its motion for preliminary injunction. June 19th, the sitting judge, Judge Means, recused himself and Judge McBride was assigned. On July 1st, Trizetto Corporation filed its response to our motion. On July 2nd, I received the phone call from Judge McBride's clerk asking for a teleconference later that afternoon. We coordinated teleconference with counsel for Trizetto and about 2.35, the teleconference began. About 2.45, the teleconference ended. The preliminary injunction had been denied without a hearing, without submission of evidence, and all other motions that had been before the judge, which were about six to seven in total, had been disposed. Can I ask a question? That would be a dumb question. Can an arbitrator issue a plenary injunction? To our knowledge, yes, and we have pursued arbitration. That is not in the record. So nothing other than the pleadings had occurred prior to when Judge Means recused himself. In other words, nothing had happened. No meetings, no nothing. Just the filings, and then his recusal is transferred to Judge McBride. Right. There were some . . . the petition and answer, the removal, and some motion practice. All right. If you've been ordered to arbitration, and the arbitrator can issue a preliminary injunction, why are you here? The arbitrator . . . okay, we were ordered to arbitration by the district judge. Technically, the motion to compel arbitration would be to compel it in Denver, and there's a jurisdictional question as to whether or not he could compel it, but he can dismiss the case because we have an arbitration clause. We have filed the arbitration, and it is ongoing in Denver. The reason we're here is because, at this point, the preliminary injunction ruling acts as a case judicata against us seeking an injunctive relief preliminary to the final hearing in Denver, and the arbitration is not proceeding at a swift pace. We had hoped it would be . . . it would proceed so swift that we wouldn't have to bother the court with the appeal, but there was an initial hearing set for the end of this month. It is in abeyance, and there's nothing rescheduled, and the parties have taken about one half of one of the eight depositions that each is allowed. There's a great deal of discovery fights occurring within the arbitration that are . . . Did anybody ask . . . did you ask the arbitrator to issue a preliminary injunction because it's going so slowly and you need interim relief? We have not because of this ruling from the district court. It's effectively a race judicata, and the first thing that Trizetto is going to say to the arbitrator is that this was decided by the district court. In fact, they said that at the hearing, at the initial, you know, the party's initial hearing when we were setting the initial schedule in the arbitration. That's really why we're here. We're seeking a vacator of the district court's decision. The district court's decision doesn't comply with Rule 65. There was no notice under Rule 6 that it would be holding a hearing. There's no evidentiary hearing held. This court's CAPA decision, I think I'm pronouncing that right, K-E-P-A, talks about the need to have a meaningful opportunity to be heard when there are factual issues and factual disputes that are going to advise a court what it should do in the injunction hearing. In this case, there are numerous factual disputes, not least of which are the core questions of does the software development technologies have trade secrets that are at issue? Have they been misappropriated? Are its alleged secrets entitled to trade secret protection? All these facts have been challenged by Trizetto. In addition, there's questions of which contracts will control. They have a master agreement that was entered in late January 2012 that had a couple of subsequent contracts as part of it, and then there was a separate contract that the parties entered in August, effective as of April 2012, regarding the licensing of the software development technologies information, its intellectual property. We sued only on that in the district court. Software development technologies only pursued a claim for the breach of that methodology license. There was no hearing on any of this. The court basically got on the phone, asked for a reply. We had no indication from the clerk or the court that it was going to be a hearing, even the court's first statements to the parties, which is on page 836 of the record, indicates that it's a conference, and essentially it was the courts holding a discussion on the telephone with the parties, giving them a chance to reply in support of their motions that they had raised, but it was going to rule. How long did this conversation occur, roughly? Well, the court's discussion started on page 836 and ended on page 841, so at the normal rate of transcription, probably about nine to eleven minutes. The usual court reporter rate is probably about 40 pages an hour, probably about nine to eleven minutes. And the court did not issue findings of fact or conclusions of law. It made four observations during the course of its discussion, and made those observations on page 840 of the record. The only thing that was substantive was a conclusion that SDT was not entitled to injunctive relief. It made an observation that nobody had pled or stated in any way, shape, or form that Trizetto couldn't respond in monetary damages, which is not the standard for irreparable harm anyway in the case of this nature. There's length of Texas law that goes the length of this courtroom saying that irreparable harm is presumed in the case of misappropriation of trade secrets. This FNC Varco case said that irreparable harm, that an injunction is available to forestall the dissipation of trade secrets, which would constitute an irreparable harm. And this court last year in the Heil trucking Kula case discussed the same thing, that there's a very long Texas list of precedent regarding how the party who loses its trade secrets will suffer irreparable harm absent an injunction. The court's failure to conduct a hearing, lack of notice, these are all mandatory under Rule 65. Rule 52 states that the court, in ruling on an injunction, has to find the facts specially and issue conclusions of law separately. At minimum, this should mean, as this court indicated in the Dennis Melancon, I think, or Melancon Incorporated construction case. Melancon, yeah. I figured it might be. That such an order from the district court in order for this court to engage in meaningful review should talk about all the elements. What do you want us to do? Just vacate the non-compliance with Rule 65 and send you back to square one? Vacate non-compliance with Rule 65 and order a hearing per the rule? What's the relief? What's the narrow relief you would seek? Narrow relief we would seek. Now in our papers we saw a vacater and a remand. At this point, considering that judicial efficiency is probably best served by just letting everybody proceed in the arbitration, we would just want it vacated. I don't know if the court can dismiss the remainder of it as moot because all causes of action, both SDTs against tri-zetto and tri-zettos against the STD, SDT. So if we just vacate, I'm not sure, saying that we are, I'm just trying to . . . I understand. It's all out of my head. If we vacated the district court's order non-compliance with Rule 65 or whatever without commenting on the merits or anything else, the parties are back to status quo in terms of the question, Judge Owen, I ask you, as far as your posture before, I guess potentially to get the That would remove what would be the res judicata bar that we currently have that's probably preventing us from doing this in front of the arbitrator. The arbitrator isn't . . . he's an honest arbitrator, so he's actually following the law. If there's a vacater of the existing order, you know, nothing more, what triggers the parties to do anything, any of what you said, either go back to the for whatever the next step would be. Is it the documents themselves, the agreements, what? Yeah, there's the documents. There's the . . . there has been a good portion of discovery taken in the arbitration. There hasn't been a whole lot of testimony, and there's a lot of ongoing discovery disputes, unfortunately. But the arbitration was invoked under what they call the master agreement, what we call the MCSA, the Master Contractor Services Agreement. It does not carve out injunctive relief against the arbitrator. It says the arbitrator cannot award punitive damages, but it doesn't say that the arbitrator cannot enjoin the parties, either way. It reserved for the parties the right to seek injunctive relief in the court, but it said nothing in terms of seeking injunctive relief before the arbitrator. That was Section 16 of the Master Agreement. Y'all by agreement submit this to the arbitrator de novo? The injunction question? No. Could you? Oh, could we? I think we could. Have we? We have not, because . . . Oh, obviously you haven't, I'm sure. Yeah, the posture that we're in now is we're kind of in a limbo state, because we're hoping for . . . we had hoped that the arbitration would be concluded. I mean, Trizetto said in its brief, you know, one thing that . . . if, you know, if SDT had pushed ahead with arbitration as of the time that they filed their brief, it could be done. Okay, we pushed ahead with arbitration because the process was getting slow. We were getting worried. We filed for arbitration the day after we filed our reply brief, and hoped that we could have everything done at that point, and that would obviate the need for this appeal, but that has not happened. And the information that we found in the arbitration raises other concerns. I think that's as far as I can go without breaching confidentiality of the arbitration. Okay. Now, obviously, based on the record below, SDT doesn't feel that the court really needs to reach the merits. If the court were going to reach the merits, we think that SDT believes that it proved the prima facie case, which is what it needs to prove, for its entitlement to preliminary injunctive relief. That's under the Jan V. v. Alguerra case from like the Dennis Melanson construction case, kind of quoted that as well. But there are so many factual disputes that go to the core of whether or not injunctive relief is proper in this case. We're not dealing with a situation where there's a First Amendment violation, like in the Millennium Restaurants case that Trizetto cited, which itself would not, as a legal matter. We're not dealing with a case where there are no factual disputes like the Anderson-Jackson case, which, again, Trizetto mentioned in its briefing and I think we talked about in ours as well, because that's, again, a case where no factual dispute was apparent between the parties. So the court didn't have to hold a hearing. Here, we had serious factual disputes that went to the core of the questions and went to the core of the issues that we were dealing with in front of the district court. The day after it received Trizetto's response to our preliminary injunction application, it ruled that it really should not comport with Rule 65, which this court has held that compliance with that is mandatory. And this court has held that Rule 65 effectively incorporates the Rule 6 notice requirements. Even if there were exigent circumstances, there's no indication of that from the district court's ruling. So for those reasons, we asked the court to  address a couple of issues. Mr. DePalma mentioned the timeline in this case. What was not clear at the time that Judge McBride did rule on this matter, there were affidavits from not only the appellant, but also the appellee that set forth a variety of issues. Appellant did their best, obviously, in their preliminary injunction application to present evidence that would support the application of a preliminary injunction. By the same token, appellee did the same thing. The record's this thick, and it's double-sided, and this is mainly the case itself. The court, I'm not sure, Judge Owens asked about whether the arbitrator has jurisdiction to render a preliminary injunction, and my reading of the arbitration agreement carves out preliminary injunctions from the scope of the arbitrator's authority. I do not know whether the parties would agree to a preliminary injunction in the case, but I do know that the court is not presenting triceto in the arbitration because it's pending in Denver. However, I think . . . Yes, Your Honor. If we vacated this, should the preliminary injunction matter go to the Denver court? Your Honor, Judge McBride indicated that because we removed the case, we did move to transfer venue. His ruling was, because we removed the case, we chose that jurisdiction so it would stay in the Northern District of Texas, and I believe he's correct on that issue. But the court can just affirm the ruling of the trial court if it answers a few simple questions. The first is whether the trial court had to make findings on each element of a preliminary injunction, and I believe the Howe case that appellants cited in their brief indicates that if any one of the four factors required for a preliminary injunction are not met, that is sufficient if the record reflects that findings were made on that. But you don't argue that this is postured anywhere close to what we normally would see, do you? I mean, it's a telephone call. I mean, Judge McBride makes some comments about what arguably could be about the merits, et cetera. I mean, we're a reviewing court. I mean, I'm not asking you to give up your argument, but I mean, do you acknowledge it's certainly not in the best posture for an appellate court to review whatever it is in that we don't have a record, I mean, as such, of all these matters which seemingly are contested? And I'm assuming, and meant to ask, I assume there are a lot of dollars at stake here. Is that a fair assumption? I think that's a fair assumption, Your Honor. The SDT estimated its damages prior to the beginning of this lawsuit. They said we could buy our rights for $3.5 million. So there is some money at stake, I agree. You know, I'm not saying that money is everything, but it's a lot. I agree. But I mean, with $3.5 million at stake and this, you know, dicey question about misappropriation of trade secrets, I mean, it's a sophisticated area of the law. It's nuanced. I mean, there's a lot at stake by both sides as to who's right, et cetera, sophisticated parties, good counsel on both sides. I mean, why should we be put to having to determine, Vailnone, the correctness of a preliminary injunction that, let's just say it might be a stretch to say it complies with Rule 65. I mean, where's the benefit to that? Well, I believe, Your Honor, that it does comply with Rule 65, and here's why. As Judge Owens has said in Garner v. Kennedy, findings of a preliminary injunction cannot be demanded as long as they give the necessary court a clear understanding of the factual basis for the decision. Here's the factual basis for the decision. One of the elements for a preliminary injunction could not be met, and that is that there was irreparable harm. SDT did not put on any evidence to support a claim of irreparable harm. Why does he put that on in a phone call? I don't know, Your Honor. I mean, there was no hearing. Well, because, Your Honor, I disagree. I have had numerous telephone hearings with courts from the Southern District of Texas . . . Well, I understand you probably have, but I would bet you that you had some notice beforehand that that's what the purpose of the call was going to be, that there was going to be a hearing, counsel, this is what we're going to do, be prepared to do X, be prepared to do Y, et cetera, et cetera, right? I respectfully disagree with Mr. DePalma's version of what happened. We received a telephone call about a hearing. All of the issues were going to be present. It happens. The courts call. And, more importantly, they had requested expedited consideration of this, and as Judge McBride said in the very opening of this . . . Well, they got that. They got that, exactly. And, they had an opportunity to object. As a matter of fact, you yourself had said you need to put into the record what you plan to prove, as well as object to the fact that you are not receiving a hearing. They did neither in this case. It's the fundamental law that you've got to give Judge McBride, hey, Judge, man, we've got to have an oral hearing on this, and you're committing error. A lot of parts of the Code of Procedures is not clear, but Rule 65 lays out, chapter and verse, what's supposed to happen. And, everybody's been around the block a few times. You noted injunctive proceedings. They're extraordinary proceedings. They're particularly what you've got to prove up. They are matters that are on a short time. But, I mean, the Rule spells it out, and it says it in, I think, sort of mandatory terms. So, I'm trying to understand this 11 minutes as compliance with Rules, and I'm not trying to criticize the trial court. That's what the Rule says. The Rule does say that, and Judge McBride did say exactly what he said was there are a lot of issues, just like you said, Your Honor, a breach contract would be found to exist, such as whether or not there's a possibility for some relief besides injunctive relief, such as the recovery of damages. I haven't found anything in the papers to indicate to me that the defendant couldn't respond to a judgment and damages if required to do so. I don't think a preliminary injunction is necessary or appropriate in this case, so I'm going to deny the request. All right. So, if Counselor Hopps is correct, all that was present were the pleadings. Is that correct? There were preliminary injunctions, there were affidavits in support of the preliminary injunction request, as well as affidavits in response. There was evidence present. There were tons of documents that were added. There were three separate agreements. All right. Let me back up, all right, because maybe I misunderstood the answer to the question. You know, the petitions filed and all of that, but you're saying in connection with the request for the preliminary injunction attached to the filing were all these affidavits. Is that what you're saying? That is correct. All right. That's the majority of what we have in the record is a . . . most two, three hundred pages of documents . . . We should glean from Judge McBride's ruling, without any fines of fact, without any conclusions of law, but just what you just said, that he read all of that and he came to some appreciation of its meaning, and we should conclude that it was an informed judgment based on that. I mean, that's what we ought to get out of it. Your Honor, I believe it provides a clear understanding of the factual basis for the court's decision. How? He doesn't advert to any of that. He doesn't refer to any of it. If you hadn't told me that that was there, I would not have known that based on what I read up to this point. It gives the court an understanding of what's in . . . what the judge's decision was made, and that will give the court the opportunity to look into the record. We hold trial judges to tell us what they say, what they mean, and lay it out. That's why we give them such great deference. For them to tell us unequivocally what it's based on, we give great deference to that because we know what it's anchored to, what it's based on, the rationale, et cetera. I mean, that's the whole point. But, I mean, why are we going to scurry through that to figure out that it supports . . . whether it's correct or not, I don't know. But, I mean, it just seems like it's kind of flipping the script, isn't it? Your Honor, it could have been much more detailed. I agree with you, absolutely. But there are certain circumstances, even when the findings of fact are not necessary, and that is when the record is exceptionally clear. So, even if these weren't here, these findings that I think are findings and apparently you don't, I believe it shows . . . Don't get me wrong. I haven't passed judgment on it. I don't mean to telegraph that. I'm just taking advantage of this forum to ask the questions and tease it out, but I haven't jumped to a conclusion about it at all. I believe that, number one, he made a finding that there was no irreparable harm because money damages were adequate. Secondly, if the court goes in and looks at the record, it will demonstrate that it is exceptionally clear, as required by Sierra Club v. FDIC that we cited. And in there, what we have is a situation where Triseto is a wealthy company, according to plaintiff's own affidavits and an argument that Triseto can answer in money damages because it is a large company, that they have put forth a price for the harm. Not only in a $3.5 million, we'll allow you to do everything you want for $3.5 million, but they also routinely license their intellectual, claimed intellectual property. And further than that, they also price the support for that. There is nothing in the record that says that there is a harm that can't be compensated in money damages in this situation. You're correct, and he does say that it appears that money damages might satisfy . . . Correct. . . . the ultimate . . . I mean, I spot you. It's said there. I mean, I guess the difficulty is just me understanding. So he may be correct. The trial court may be correct on the ultimate determination. The problem I have is just the reviewing process is not optimum when, contrary to Rule 65, we don't have it laid out to where we can look at it and determine. The trial court is eminently correct. Money damages doesn't satisfy it. And the main argument counsel opposite is making, I think, is the noncompliance with Rule 65, and I take it you're saying close enough . . . it was close enough is what you're saying. I think the court's interpretation of Rule 65 is that this would suffice. If it wouldn't, the record is exceptionally clear that shows that there is no irreparable harm in this case. That's one of the four elements, and the court need only make a decision as to one of the four elements and its inability of the plaintiff, SDT, to meet the burden of proof in order for the case court to affirm the trial court's ruling. Now, the second issue is which court's law applies, and that's important in this case, and we believe Colorado law applies because it's set forth in the contract, the first agreement between the parties, that Colorado law applies. Why is that important? Because in Colorado, the presumption of irreparable harm in a trade secret case is not present as it is in Texas law. We've cited the Bishop case. It hasn't been responded to by the appellant in its briefing. Well, Judge McBride didn't say, okay, I've gone through and I looked at the update of X, and I think that SDT can clearly prove up its damages under Colorado law. There's not going to be a tracing problem. We don't have any of that. I agree with that, Your Honor, but this court has the duty to apply the law that's applicable in this case. Let's say we apply Colorado law. Colorado law gives you an injunction if you have irreparable injury. But you have to prove irreparable. We don't have any findings by Judge McBride that there are no tracing issues here at all. It's easily traceable if this proprietary information is widely disseminated. He's just got a very brief statement. It's compensable by damages. Your Honor, I agree with you that in the likelihood of success on the merits prong, there are fact issues. If this goes back, it does have those determinations have to be made, and the trial court did not do its job in finding the fact as to that issue. But as to the sole issue of irreparable harm, I believe the trial court made its findings. Whether it applied Texas law incorrectly or Colorado law correctly, this court, that's the job of this court is to say this is what the law is. Well, the court let us sift through all the affidavits and say he made a good, bad judgment call or abuses discretion on whether damages are adequate. It took note. Yes, but he made the determination that damages were adequate in the situation in his finding. And so the court does give deference to that. So it doesn't have to go back and check the record. Well, we have to see if there's evidence to support that finding. And there is. And there is. But it's not our normal course to go sifting through things. I mean, you know, we've got a summary judgment on the no vote. That's different. But, you know, to divide, as I said, you may be ultimately correct. The problem is just process-wise it leaves something to be desired. Given, and I certainly don't mean to suggest that a lot of money makes it more important, less money doesn't. I'm not saying that at all. If no money was involved, but clearly where there are high stakes on both sides, it just seems even your client or whatever is benefited by, you know, a full, fair determination. I know you would want to hang on to the status quo. You know, I get you. But it is murky here, not only on that, but just this question you just raised about applying Colorado law or not. I'm not sure. I mean, you're in the Northern District of Texas. I don't know. Well, let's ask you the question we asked. Assuming we don't agree with your position and we just want to do the least amount of harm here and we just vacate for noncompliance, you know, with Rule 65 or something to that extent, does that put the parties in so far as what's playing and where you are in this whole question of what the arbitrator can do? Again, I think the party's agreement would send this back down to the trial court and we would start at square one as it was on July 2nd of last year. Whether the parties would agree to arbitrate the matter with the court. I'm not representing Tri-Zetto in that matter. Okay. At minimum. I mean, you've answered me. You'd be back down in the Northern District of Texas to tackle whatever issues might be. It may just be the court needs to make further findings on likelihood of success. I still think he's done an adequate job on irreparable harm. So the Colorado proceedings that are arbitrated is just pending until all of this is unraveled one way or the other? My understanding until today was that the arbitration was started after we filed our appellee's brief and mentioned that they had taken six to nine months. And so where was the harm? And now it's pending. And it's, like I said, I'm not involved with that. And it is. I understand that it is confidential under the jams rules. So I don't know how much I'm privy to as counsel here. That's fair enough. So I've hit the highlights. If the court has any other questions, I'll be happy to answer them. No, I appreciate it. I mean, and I think we understand your argument. You've helped us with understanding what is in the filings, et cetera, because I was under the misapprehension that just the complaining and answering, you've helped in explaining that. So, all right. Thank you. Go ahead. I don't want to have to create more work for the court, but I still believe that under the Sierra Club versus FDIC, if this ruling, if this finding the court determines is inadequate, it still has a duty to go back and look at the record to see if there's exceptionally clear evidence of lack of irreparable harm, which I believe is applicable here. Okay. All right. Thank you. Do you have your argument? All right. Any rebuttal, Mr. DiPaolo? Your Honor, very briefly on the conflict of the law issue. The district court initially applies the form's choice of law rules because it's sitting as an Erie court. So, it applies Texas law on conflicts of laws. Texas requires you to plead and prove the conflict and the most significant relationship or a choice of law provision. The methodology license doesn't have a choice of law provision. So, there's no default to Colorado law under the methodology license, which is what we claimed under, which is what STT sued for breach of in the trial court. The tri-zetto briefing in the trial court did not indicate how Colorado law differs from Texas law. They did not plead and prove. Mr. Jenkins just mentioned the Bishop case. The Bishop case is one in which the plaintiff said, essentially, I have pled for misappropriation of trade secrets. Therefore, I get a preliminary injunction. The Colorado Court of Appeals said, no, you still have to show irreparable harm, which means that you have to make some showing that there was a misappropriation of trade secrets because that would be the irreparable harm. A few years after that Bishop case, the Colorado Court of Appeals, same court, although it might be a different branch, so I apologize if that makes a difference, but I don't know the Colorado divisions. The same court in the Gold Messenger, Inc. v. McGay, M-C-G-U-A-Y case. This is 937 P. 2nd, 907. This is after the Bishop case, and this is in our brief, in our reply brief at page 17. That court said unequivocally that Colorado law recognizes that misappropriation of a trade secret is, quote, in and of itself grounds for an injunction against a defendant under the Colorado Uniform Trade Secrets Act, unquote, and it's cited Colorado revised statutes, section 7-74-103. Therefore, if the district court, and if this court infers that the district court made a finding that there was no irreparable harm because any harm to SDT could be offset by money damages at the after trial, and there is no irreparable harm between now and that ultimate trial date, it made an erroneous conclusion of Colorado law, it's wrong. And the district court has discretion regarding the facts, but it has zero discretion regarding applying the law appropriately. It has to apply the law correctly. If it had the ultimate answer that Mr. Jenkins said, that this one facet of the preliminary injunction test was not met, that's the only possible conclusion that there was and potentially finding. It made a legally erroneous conclusion, and for that reason it has to be vacated. It made no other findings. It made no other conclusions other than SDT doesn't get a preliminary injunction. It has basically done nothing to aid this court's review, whereas any magistrate who had done this, put forth an opinion for a district court would probably set out facts and conclusions in a mechanical basis, just as former Texas Supreme Court Justice Baker used to do it in a mechanical basis. Here's the law. Here's the facts. Here are the facts applied to the law. That's not what we have here, and so I don't know how you can review that. Thank you to both counsel for your briefs and argument. The case will be submitted. We call the final case for argument this morning. Lito Martinez, assignation.